# SUPREME COURT.

ELEANOR E. BRANDON, Executrix of NICHOLAS BRANDON, deceased, agt. ABRAM W. BRANDON and others, infants, by BURTON G. MORSS, their Guardian, and BURTON G. MORSS, General Guardian, &c.

*Construction of a will — a de facto trustee authorized to recover from the estate moneys expended by him individually, for the benefit of the estate.*

The provision of the will in question was as follows: "I do hereby will in trust to my wife, Elizabeth, all my property, both personal and real, whatsoever, and wheresoever, during her lifetime. In consideration of which, it shall be her duty to care, provide and educate our children *until they are of age.* After her death, all the real estate which may be found, is to be divided equally among my sons; and all my personal property which shall be found then shall be equally divided among my daughters. This is my last will and testament, and it is my desire that the spirit as well as the letter thereof may be carried out."

There were no executors named in the will, and the widow, Elizabeth, and the brother of the deceased, Nicholas, were appointed administratrix and administrator with the will annexed. There were eight children, all minors, at the death of the testator.

The administratrix, aided by the administrator, took the charge and management of the estate and the support of the children in pursuance of the provisions of the will for about two years, when the administratrix died, leaving the administrator in sole charge, who proceeded with the same management and care of the family as was done prior to the death of the administratrix for about two years, when one of the defendants herein was appointed as a guardian for the infant heirs, and a general guardian, to whom the administrator delivered up the control and management of the estate — having during his management expended something over $200 of his own funds for the benefit of the estate.

The administrator having subsequently died, his executrix brings this action to recover the amount of money expended by the administrator out of his private funds for the benefit of the defendants' estate. The defense is that such expenditure was made without lawful authority —

Brandon agt. Brandon.

that it was expended generally without reference to any one child — that on the death of their mother, the female children took the personal estate and the male the real, and the grant of the relief prayed for will take the share of one child and give it to another.

*Held*, that the disposition of this case turns upon the construction of the will mentioned. The *letter* of the will does provide for a division of the estate among the children on the death of the mother; but the *spirit* of the will, which evidences the intent of the testator, also provides that the devise to the widow and mother, of the whole estate, is upon " the consideration that she should care, provide and educate our children until they are of age." The object of the will was to provide for the children during their minority from the whole estate, and it follows that the real estate would be divided among the male children and the personal among the female — only after such object had been accomplished, and not immediately upon the death of their mother. This disposes of the objection that a judgment in favor of the plaintiff may take from the share of one child to pay the debt of another.

This being strictly an equitable action the statute limitation of ten years applies to it.

*Greene Circuit, February*, 1874.

*James B. Olney & Rufus W. Watson*, for plaintiff.

*Rufus H. King*, for defendants.

Westbrook, *J.*—Lucas E. Brandon departed this life in March, 1859, leaving his widow, Elizabeth, and several minor children him surviving. He also left a last will and testament, which was duly admitted to probate by the surrogate of Greene county, in April, 1859. The will named no person as the executor thereof, and the widow, Elizabeth, and his brother Nicholas, both now deceased, were appointed the administratrix and administrator thereof, with the will annexed, by the surrogate.

The will, after providing for the payment of his debts and funeral expenses, declared: " I do hereby will in trust to my wife, Elizabeth, all my property, both personal and real, whatsoever and wheresoever, during her lifetime. In consideration of which it shall be her duty to care, provide and

educate our children, until they are of age. After her death, all the real estate which may be found is to be divided equally among my sons; and all my personal property, which shall be found then, shall be equally divided among my daughters. This is my last will and testament, and it is my desire that the spirit as well as the letter thereof may be carried out."

With the aid and assistance of Nicholas, the widow endeavored to carry out the provisions of the will, the children being all maintained by her as her own family, and out of the common estate. This continued for the space of about two years, when the widow also died, she departing this life in March, 1861. After her death, Nicholas, the uncle of the children, and the co-administrator with the will annexed of Lucas, took care of the family and property for about two years more, and until August, 1863, when the defendant, Burton G. Morss, was appointed the general guardian of the said infants, and to him Nicholas surrendered the estate. In the management of the estate and providing for the children Nicholas expended, out of his own means, the sum of $219.69, which has not been repaid to him. There is no pretense or question but that this money was honestly, judiciously and properly expended for the benefit of the children and estate, and that this sum is honestly his due, but it is contended that he had no lawful authority to make the expenditure; that it was expended generally, without any reference to any one child, and that on the death of their mother the female children took the personal estate, and the male the real, and the grant of the relief prayed for will take the share of one child and give it to another; and that the whole claim is barred by the statute of limitations.

The disposition of this case turns upon the construction of the will of Lucas E., the portions of which bearing upon the question to be considered have been given. Fortunately the instrument itself declares the manner of its interpretation, for the testator has said: "It is my desire that the affairs of my

estate shall be managed prudently, and that the spirit, as well as the letter thereof, may be carried out." Guided by this rule, may we not ask: How could the children be cared, provided for and educated, " until they are of age," if the estate was to be distributed among them immediately upon the death of their mother? The " letter " does provide for such a distribution, but, it seems to me, that the " spirit " does not. When Lucas died, the children (there were eight) were all minors, the eldest not fourteen, and the youngest less than one year old. Did he intend that the provision which he had made for the support and education of these children until they attained their majority, should be abrogated and cease with the life of their mother? There was no guarantee for her life for an hour after his death, and yet he asks that his " estate shall be managed prudently ;" that " the spirit, as well as the letter," of the will may be carried out. The will plainly looks to the management of the estate, as a whole, prudently, that the object thereof might be accomplished. What was that object? The devise was of the whole, real and personal, to the widow and mother, upon the " consideration" that she should " care, provide and educate our children until they are of age." This was the sacred and express trust created · by the will — one near and dear to his heart — and, to accomplish which, he expresses the desire that the " estate should be prudently managed."

When the will of Lucas E. was before this court for construction, though Elizabeth was still living, the possibility of her death before the completion of her trust must have been apparent; and yet, in view of such a possibility, the judgment of the court was, that the whole estate of Lucas passed to his widow, to be expended, if necessary, " for the maintenance and education of the said children during their minority." In this decision I most fully concur.

The object of the will, then, being to provide for the children, during their minority, from the whole estate, it follows that the real estate would be divided among the male

children, and the personal among the female, only after such object had been accomplished, and not immediately upon the death of their mother. This the "spirit" of the will requires, if the exact "letter" does not, and the former, the testator has declared, shall be our guide as well as the latter. This view disposes of the objection that a judgment in favor of the plaintiff may take from the share of one child to pay the debt of another. Neither child, if we have correctly interpreted the will, had any share until all had been cared for and educated up to their arrival at full age. No other construction of the instrument would carry out its object, or distribute the property equally. If the estate were divided among the several children immediately upon the death of their mother, it is manifest that the oldest child, who had, up to that date, been cared for and educated from the common fund, would, in what he then obtained, and what he had prior to that time received, derive a larger benefit from his father's property than the youngest. And what is true of the oldest and youngest is true, though the proportions may be less, of each and all the others.

· Upon the death of the mother this court would have appointed another in her stead to discharge the trust created by the will. No application, however, for that purpose was made, and Nicholas, whose estate the present plaintiff represents, doubtless supposing that his duties as administrator with the will annexed so required, proceeded in good faith to do that which the father had previously committed to the mother. In short, he did precisely that which the court would have authorized him to do had he, or any one in behalf of the children, applied to appoint him the trustee in lieu of his deceased sister-in-law.

This brings us face to face with this question : Will a court of equity regard that as illegally done which was performed in good faith, and with an honest intention, by an individual whom the court would have appointed for that very purpose ? It is true that the exercise of such trusts by *de facto*, and not

Brandon agt. Brandon.

*de jure*, trustees, are not to be encouraged, and great care should be taken to sanction no transaction not performed honestly, and the party in good faith supposing that he was acting legally. Within these limitations, I know of no principle of either law or of equity which will prevent this court from doing exact justice to parties.

In this case the bills and vouchers presented, and all the facts, show an honest and real expenditure of money for the benefit of infants — an expenditure the integrity of which is not even questioned — would it be just to afford the estate, which the plaintiff represents, no relief? We think not.

The action which is to be determined is one of a strictly equitable character. No suit at common law could ever have been entertained. A *de facto* trustee applies to a court or equity to give him relief against the estate of the *cestui que trusts* for money honestly expended. He concedes he has no remedy by ordinary common-law action, but invokes the good conscience of a tribunal vested with the powers of the old court of chancery to give him relief. Such an action, if barred at all by lapse of time (it being a transaction between trustee and *cestui que trusts*), would require ten years.

The result of my examination is, that the plaintiff is entitled to judgment. The findings of law and fact will be prepared by the attorneys of the plaintiff, and settled on notice to the attorneys of the defendants. When settled, they will be entered as found by the jury, and the judgment of the court pronounced thereon. If parties prefer, there need be no verdict, but the findings of fact and conclusions of law may both be by the court.